**File Name: 08a0570n.06**
**Filed: September 23, 2008**
**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

**No. 07-3535**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| **LOUIS D. BROWN III,** | ) | |
| | ) | ON APPEAL FROM THE |
| *Plaintiff-Appellant*, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE NORTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| **CITY OF CLEVELAND**, | ) | **O P I N I O N** |
| | ) | |
| *Defendant-Appellee*. | ) | |
| | ) | |

BEFORE:     COLE, GIBBONS, Circuit Judges; and FORESTER, District Judge.[*]

**COLE, Circuit Judge.**  Plaintiff-Appellant Louis D. Brown III ("Brown") appeals the district court's grant of summary judgment in favor of Defendant-Appellee City of Cleveland ("Defendant" or "Cleveland") and the dismissal of his allegations of employment discrimination on the basis of his sex, age, disability, retaliation for the exercise of his rights under the First Amendment, hostile work environment, negligent and intentional infliction of emotional distress, slander, and libel.  For the reasons set forth below, we **AFFIRM** the decision of the district court.

**I. BACKGROUND**

Brown is a forty-nine-year-old African American male.  In 1990, after receiving a Bachelor

---

[*] The Honorable Karl S. Forester, United States District Judge for the Eastern District of Kentucky, sitting by designation.

of Arts degree in African American Studies from Ohio State University, Brown commenced his employment as a Water Pipe Repairmen in the Division of Water within the Cleveland Department of Public Utilities. Five years later, Defendant transferred Brown to the Department's Customer Service Division, where he served as a bill collector, or as it is now known, a Customer Service Representative. Some time after assuming this post, Dr. James Young, Chairman of the Department of Cardiovascular Medicine for the Cleveland Clinic, diagnosed Brown with congestive heart failure. Due to his medical condition, Brown applied for and was granted disability leave from March 1, 2001 through January 5, 2004. Since returning to work in 2004, Brown has continued to serve as a Customer Service Representative in the Division of Water.

Throughout his employment with Defendant, Brown has been an active member of a local union, American Federation of State, County, Municipal Employees Local 100 ("AFSCME Local 100"). The terms and conditions of employment of AFSCME Local 100 are governed by a collective bargaining agreement. While a member of AFSCME Local 100, Brown has held numerous positions, including Election Chairperson, Chapter Officer/Secretary for the Department of Public Utilities, Chapter Chairperson, and Steward in the Customer Service Department of the Division of Water.

Brown alleges that on June 14, 2004, he applied for an internal job posting within the City of Cleveland for the position of a Deputy Project Director, Claims Coordinator ("Claims Coordinator"). Robin Halperin, Risk Manager for the Division of Water, asked Brian Burre, Safety Manager to interview candidates for the position of Claims Coordinator and to recommend individuals for Halperin's consideration. After interviewing eight of the thirteen applicants,

including Brown, Burre selected only Dorlisa Threat, a thirty-three-year-old woman, for a follow-up interview with Halperin. Halperin subsequently hired Threat for the Claims Coordinator position.

Burre maintains that four factors militated against his decision to hire Brown as Claims Coordinator. First, based on his evaluation of Brown's resume and credentials, Burre did not find that Brown satisfied either the educational or the alternative work experience requirements. Specifically, Burre did not consider Brown's field of study, African American Studies, to be closely related to the Claims Coordinator position and did not consider Brown's previous employment as a Water Pipe Repairmen to be relevant work experience. Second, Burre found that Brown's level of involvement in and commitment to AFSCME Local 100 impeded his ability to serve as a strong advocate for the Division of Water's interests with respect to the issues of employee injury, lost time, and the management of employee injury claims. Third, Burre concluded that Brown possessed "less than excellent" communication skills, as reflected by the typographical and grammatical errors in the cover letter and resume Brown submitted. Lastly, Burre found troubling Brown's lack of work experience administering claims or other similar programs. In contrast, Burre explained that he had recommended Threat for a second-round interview with Halperin because she possessed prior related experience within the Division of Water, strong investigative and analytical skills, and excellent written and verbal communication skills.

In addition to Brown's allegations that he was wrongfully denied a promotion, he also asserts that Defendant discriminated against him on the basis of his sex by denying his request for a handicapped parking space to accommodate his congestive heart failure condition. In support of his claim, Brown maintains that after refusing his request, Defendant provided handicapped parking

3

spaces to two white women and one black woman, all of whom were less senior than Brown. After being diagnosed with congestive heart failure, Brown submitted an application for a parking space close to his office building, along with an Americans with Disabilities Act ("ADA") Request for Accommodation form. By way of a letter dated February 19, 2004, Tony Washington, Defendant's Labor Relations Manager, informed Brown that the Accommodation Review Committee had denied his request because the "medical documentation [Brown] submitted failed to demonstrate that [Brown was] disabled within the meaning of the [ADA]."

In response to this denial letter, Brown filed a grievance requesting that Defendant grant him a handicapped parking space and "cease and desist discrimination against [L]ocal 100 members in the assignment of parking spaces." On July 13, 2004, Eric Myles, Defendant's Labor Relations Officer, denied Brown's grievance. The denial letter notified Brown that Defendant's Citywide ADA Committee had reviewed his request for accommodation and dismissed it because the collective bargaining agreement established by AFSCME Local 100 did not provide for parking as a contractual provision. Myles's letter also explained that Defendant had given Brown its "Policy on Parking," which clearly provides that assigned parking spaces for City employees are a privilege rather than a guaranteed benefit of employment.

According to William Tell, Chief of the City of Cleveland's Public Utilities Police Department, who is responsible for administering and enforcing the general parking policy for the Department of Public Utilities building, in 2004, there were approximately 500 people working in the building. The parking lot contained 133 available parking spaces, 104 of which were located in an employee-only underground parking garage and twenty-nine of which were located in an

4

employee-only uncovered rear parking deck. Any individuals working in the Department of Public Utilities building who were not assigned a parking space had the option of parking in the Municipal Parking Lot free of cost and taking a local bus to the building. Additionally, in 2003, Defendant was able to offer 215 employees who worked in the Department of Public Utilities building, but who did not possess a parking space in the parking lot, additional free parking at a location six blocks away from the building. When Brown returned to work after his disability leave in 2004, Defendant offered Brown a parking space at this second location in January and again in June; Brown declined both offers.

In response to the preceding events, on July 28, 2004, Brown lodged a complaint against Defendant with Madeline Corehado, Labor Relations Officer in the Department of Personnel and Human Resources, alleging disparate treatment in Cleveland's failure to accommodate his disability. On August 13, 2004, Brown represented himself at a grievance hearing regarding his complaint. In a letter dated September 2, 2004, Corehado informed Brown that he had proffered no new evidence at the hearing to warrant reversing the previous denial of his grievance. Specifically, Corehado's letter stated that Defendant's denial of Brown's request for a handicapped parking space did not violate the collective bargaining agreement; Brown had submitted an ADA Request for Accommodation with no accompanying medical documentation; and the three women who Brown claimed had been unfairly granted handicapped parking spaces were not accommodated through the ADA for parking.

On August 6, 2004, Brown filed a dual claim with the Ohio Civil Rights Commission ("OCRC") and the federal Equal Employment Opportunity Commission ("EEOC") alleging that

Defendant had failed to accommodate his heart condition and had failed to promote him to the position of Claims Coordinator. He further charged that he was discriminated against on the basis of his sex because he knew of at least three women who had requested and received handicapped parking spaces. In response, William Menzalora, the Assistant Director of Law for the Defendant, filed an October 7, 2004 position statement on its behalf. The OCRC then determined that Defendant was in violation of the Ohio Revised Code "because it d[id] not have any marked handicap parking spots in its parking lots." Accordingly, on April 6, 2005, Defendant executed a Conciliation Agreement with the OCRC under which it agreed to voluntarily comply with Ohio law by converting seven parking spaces at 1201 Lakeside Avenue from non-handicap to handicap parking spaces, and it executed a Conciliation Agreement with the OCRC. Subsequently, on May 5, 2004, the OCRC issued its final decision, "find[ing] that [Brown] was not denied a promotion or a parking space based on his race, age, or sex."

On December 27, 2005, after receiving a right-to-sue letter from OCRC, Brown filed a pro se action against Defendant in the United States District Court for the Northern District of Ohio. Brown then retained counsel and filed an amended complaint. At a status conference held on August 7, 2006, by the court's recommendation, the parties submitted a joint stipulation specifically identifying the claims at issue in the suit. Together, these two documents specify Brown's allegations as follows: (1) sex and age discrimination based on the denial of a promotion;[1] (2) sex

---

[1] Though they were included in the parties' stipulation, the district court dismissed Brown's claim for disability discrimination based on the denial of a promotion and the denial of his request for a handicapped parking space on October 26, 2006.

discrimination based on the denial of a handicapped parking space; (3) retaliation based on

participation in union activity and the exercise of Brown's First Amendment rights; (4) a hostile

work environment based on race, sex, age, and the exercise of First Amendment rights; (5) negligent

infliction of emotional distress; (6) intentional infliction of emotional distress; (7) slander; and (8)

libel.

After answering Brown's amended complaint, Defendant filed a motion for summary

judgment.  On March 22, 2007, the court issued a memorandum opinion and order granting

Defendant's motion.  Brown timely appealed the ruling to this Court.

## II. DISCUSSION

### A.	Standard of Review

We review a district court's grant of summary judgment *de novo.  Clay v. United Parcel

Serv., Inc.*, 501 F.3d 695, 700 (6th Cir. 2007).  Summary judgment is appropriate if "the pleadings,

the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ.

P. 56(c).  Considering all evidence in the light most favorable to the non-movant, *Wright v. Murray

Guard, Inc.*, 455 F.3d 702, 706 (6th Cir. 2006), our task is to ascertain "whether the evidence

presents a sufficient disagreement as to require submission to a jury or whether it is so one-sided that

one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52

(1986).

The moving party bears the burden to show the absence of any genuine issues of material

fact.  *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000).  Once the moving party satisfies

its burden, the opposing party must then go beyond its pleadings and "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2).

**B.    Merits**

*1.    Failure-to-Promote*

On appeal, Brown maintains that Defendant discriminated against him on the basis of his age and sex in violation of Title VII by denying him a promotion to the position of Claims Coordinator. Defendant, in turn, insists that Brown can establish neither a prima facie case of failure-to-promote nor pretext, a proposition that the district court accepted. We agree.

Brown's claim of discrimination is governed by Title VII and the doctrinal framework of the *McDonnell Douglas/Burdine* burden-shifting scheme. *See McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). Under this scheme, a plaintiff supporting allegations of discrimination with circumstantial evidence must overcome a series of shifting burdens of production. *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 398 n.9 (6th Cir. 2008). Initially, the plaintiff must prevent evidence sufficient to establish a prima facie case of discrimination by a preponderance of the evidence. *Id*. at 391. Once the plaintiff establishes this prima facie case, the burden of production shifts to the defendant to offer evidence of a legitimate nondiscriminatory reason for the adverse employment action. *Id*. Finally, if the defendant succeeds in this task, the burden of production shifts back to the plaintiff to show that the defendant's proffered reason was not its true reason, but merely a pretext for discrimination. *Id*. at 391-92.

In the context of a claim of failure-to-promote, a plaintiff must fulfill its prima facie burden by demonstrating that "(1) [he] is a member of a protected class; (2) [he] applied for and was

qualified for a promotion; (3) [he] was considered for and was denied the promotion; and (4) an individual of similar qualifications who was not a member of the protected class received the job at the time plaintiff's request for the promotion was denied." *White v. Columbus Metro. Hous. Auth.*, 429 F.3d 232, 240 (6th Cir. 2005). Brown has not established a prima facie case of failure-to-promote because his evidence does not show him to be qualified for the Claims Coordinator position. On appeal, Brown points to his four-year degree in African American studies from Ohio State University and his familiarity with workers's compensation gained through his involvement with AFSCME Local 100. These credentials, however, do not demonstrate the ways in which Brown satisfies either the educational or alternate work experience requirement for the Claims Coordinator position. Defendant's job posting for the Claims Coordinator position specified that two of the criteria for hiring were a "bachelor's degree in a closely related field from a four-year accredited college (two years of experience may be substituted for each year of lacking education)" and "two years of full time, progressively responsible experience administering occupational safety and health, workers['s] compensation, or a similar program[.]"

With respect to the educational criteria required for the position, Brown has adduced no evidence indicating how a Bachelor of Arts degree in African American studies is a field closely related to the predominantly administrative position of Claims Coordinator. Likewise, Brown offers no evidence to explain how either his former position as a Water Pipe Repairman or his current position as a Customer Service Representative equipped him with "closely related experience" sufficient to prepare him to be a Claims Coordinator. Moreover, Brown has set forth no reason why this Court should consider his handling of union-related matters to be the qualitative or quantitative

equivalent of eight years of actual work experience.

Similarly, Brown's employment history does not qualify as two years of full-time work experience in an area such as occupational safety and health or workers's compensation. Though Brown may have become familiar with workers's compensation through his involvement with AFSCME Local 100, his union duties are extracurricular, and, as such, should not be considered official work experience.

Even granting Brown considerable deference as the non-moving party by assuming that he has satisfied his prima facie burden, Defendant has articulated legitimate, non-discriminatory reasons for its decision to forego promoting Brown. On appeal, Brown insists that Threat was less qualified than he because she possessed only a high-school diploma. Notwithstanding Threat's lack of a college degree, her more than twelve years of closely related work experience fulfill the work experience substitute for the educational requirements. Specifically, Threat worked for four years at a law firm preparing a weekly claims workload for the firm's bill collectors, one year at another law firm serving as office manager, four years at a bank coordinating bankruptcy cases, and four years in the Division of Water's personnel department administering various leave of absence policies, payroll, and timekeeping. Taken together, this evidence reflects that Defendant hired Threat based upon her considerable experience in administrative work, and we believe this to be a legitimate, non-discriminatory hiring decision. Accordingly, we affirm the district court's grant of summary judgment for Defendant on Brown's failure-to-promote claims.

### 2. Denial of Handicapped Parking Space

In a similar vein, the district court properly granted summary judgment to Defendant on

Brown's claim of sex discrimination, allegedly stemming from Defendant's decision denying his request for a handicapped parking space. Though, as noted *supra*, Brown's failure-to-promote claim requires the application of a specialized formula of the *McDonnell-Douglas/Burdine* framework, the standard formula calls for the plaintiff to make a four-part prima facie showing that: "(1) [he] is a member of a protected class, (2) [he] was subjected to an adverse employment action, (3) [he] was qualified, and (4) [he] was treated differently than similarly-situated male and/or nonminority employees for the same or similar conduct." *McClain v. Nw. Cmty. Corr. Ctr. Judicial Corr. Bd.*, 440 F.3d 320, 332 (6th Cir. 2006).

Brown's claim fails to meet the second of the four elements as he cannot establish that the denial of a handicapped parking space constitutes an adverse employment action. The Supreme Court has held that in the *McDonnell Douglas* context, a plaintiff arguing that he has suffered an adverse employment action must show that the employer's action, "might have 'dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006). Further, this Court has defined an adverse employment action as an event that causes a plaintiff to "receive[] *significantly diminished* material responsibilities." *Kocsis v. Multi-Care Mgmt., Inc.*, 97 F.3d 876, 886 (6th Cir. 1996) (internal quotation marks omitted) (emphasis in original). Implicit in this definition is that the diminishment of responsibilities affects the plaintiff's capacity as an employee. *Id.* (citing *Flaherty v. Gas Research Institute*, 31 F.3d 451, 456 (7th Cir. 1994) (a semantic change in title and a "bruised ego" were not enough to establish an adverse employment action, especially where plaintiff's pay remained the same)).

Nonetheless, during his deposition, Brown admitted that a Customer Service Representative is not required to drive. Defendant does not pay Brown for the time he spends commuting to and from work, and he is not required to have a motor vehicle at work. Additionally, the collective bargaining agreement existing between Defendant and AFSCME Local 100 does not require Defendant to provide Brown (or any other union member, for that matter) with a parking space. Accordingly, though Defendant's denial of Brown's request for a handicapped parking space may have been adverse to Brown's interests in a general sense, it certainly does not amount to an adverse *employment* action under the law.

### 3. Retaliation

As his third charge, Brown maintains that Defendant retaliated against him for his participation in AFSCME Local 100 and the attendant exercise of his First Amendment rights. As the district court correctly concluded, however, Brown's retaliation claim is barred because he failed to exhaust his administrative remedies.

When Congress enacted Title VII, it designed "an elaborate administrative procedure, implemented through the EEOC, that is designed to assist in the investigation of claims of racial discrimination in the workplace, and to work towards the resolution of these claims through conciliation rather than litigation." *Patterson v. McLean Credit Union*, 491 U.S. 164, 180-81 (1989) (citing 42 U.S.C. § 2000(e)-5(b)). Prior to accessing this elaborate conciliatory scheme and bringing suit under Title VII in federal court, a plaintiff alleging discrimination must perform two administrative prerequisites: (1) file timely charges of employment discrimination with the EEOC, and (2) receive and act upon the EEOC's statutory notice of the right to sue. *Puckett v. Tennessee*

*Eastman Co.*, 889 F.2d 1481, 1486 (6th Cir. 1989) (citing 42 U.S.C. § 2000(e)-5(f)(1)).

In the instant case, on August 6, 2004, Brown filed discrimination claims with the EEOC and OCRC charging that Defendant discriminated against him on the basis of sex, age, and disability by denying him a promotion and refusing to provide him with a parking space. The form Brown used to file suit specifically contains a box a complainant must check to indicate a retaliation claim, but Brown did not complete this section of the form. Therefore, Brown failed to satisfy one of the administrative prerequisites for bringing his retaliation claims, namely filing a charge of retaliation with the EEOC in a timely fashion. *See Tisdale v. Fed. Express Corp.*, 415 F.3d 516, 526 (6th Cir. 2005) (stating that "[i]n the case of a retaliation claim not included in an EEOC charge, we have held that 'retaliation claims based on conduct that occurred *before* the filing of the EEOC charge must be included in that charge'") (emphasis in original).

Given Brown's status as a lay complainant, we are mindful of our task to "liberally construe[]" his EEOC charge, as lay complainants "are unschooled in the technicalities of the law and proceed without counsel." *Tisdale*, 415 F.3d at 526 (internal quotation marks omitted). In such cases, we have allowed the "[t]he judicial complaint [to] be limited to the scope of the EEOC investigation reasonably expected to grow out of the charge of discrimination." *Id.* (quoting *Ang v. Procter & Gamble Co.*, 932 F.2d 540, 545 (6th Cir. 1991)). Pursuant to such liberal review, "where facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho, Cumberland Coll. Cafeteria*, 157 F.3d 460, 463 (6th Cir. 1998).

Nonetheless, Brown's claim still fails. Brown does not explain how his allegations of

13

retaliation would reasonably grow out of his charge that Defendant denied him a promotion and a handicapped parking space on account of his sex and his age. In our view, the facts related to the charged claims regarding failure-to-promote and the denial of a handicapped parking space would not prompt the EEOC to investigate Brown's retaliation claims. *See Davis*, 157 F.3d at 464 (finding that it would be unreasonable to expect an EEOC investigation of sex discrimination to grow out of another charge simply because a plaintiff wrote a "feminine name" in the space provided). Thus, even viewing liberally his EEOC charge, because Brown has failed to exhaust the administrative prerequisites for his retaliation claim, we affirm the district court's grant of summary judgment to Defendant.

> ### 4. *Hostile Work Environment*

We likewise conclude that Brown failed to satisfy the administrative prerequisites for his federal hostile work environment claims. According to Brown's amended complaint, he experienced a hostile work environment when Defendant took baseless disciplinary action against him, removed him from his post on the Diversity Committee, and excessively monitored his performance of union-related activities during job hours.

The reasoning governing our decision regarding Brown's retaliation claims is equally applicable here. Just as Brown failed to exhaust his administrative remedies for his retaliation claims, he failed to indicate his decision to pursue hostile work environment charges on the August 6, 2004 EEOC form. Moreover, it is unreasonable to believe that the EEOC's investigation into Defendant's decision to deny Brown a promotion and a handicapped parking space would lead it to investigate his membership on the Department's Diversity Committee, his union-related activities,

or his disciplinary record at work. *See Davis*, 157 F.3d at 464. Accordingly, Brown's charge of a hostile work environment cannot be "reasonably expected to grow out of the charge of discrimination." *Tisdale*, 415 F.3d at 526.

   5.    *State Law Claims*

Brown also pursued several state law causes of action against Defendant, including negligent infliction of emotional distress, intentional infliction of emotional distress, slander, and libel. After dismissing all of Brown's federal law claims, the district court declined to exercise supplemental jurisdiction over his state law claims. *Brown v. Cleveland*, 1:05-CV-02974, 2007 WL 915168, at *12 (N.D. Ohio Mar. 23, 2007). On appeal, Brown does not address the district court's dismissal of his state law claims. This issue is therefore waived. *See United States v. Layne*, 192 F.3d 556, 566 (6th Cir. 1999) (explaining that "[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived" on appeal).

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's grant of summary judgment to Defendant.