NOT RECOMMENDED FOR PUBLICATION
File Name: 09a0098n.06
Filed: February 5, 2009

No. 08-5180

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| DARRYL JONES, MICHAEL JONES, ANTHONY PASLEY, and STEPHEN GIBSON, | ) ) ) ) | |
| Plaintiffs-Appellants, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE |
| v. | ) ) | MIDDLE DISTRICT OF TENNESSEE |
| CITY OF FRANKLIN, | ) ) | OPINION |
| Defendant-Appellee. | ) ) ) | |

Before: KENNEDY, COLE, and GILMAN, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** Darryl Jones, Michael Jones, Anthony Pasley, and Stephen Gibson are black firefighters employed by the City of Franklin, Tennessee. They filed separate complaints in August 2006, alleging that the City failed to promote them because of their race and failed to eliminate a racially hostile work environment. The district court granted summary judgment in favor of the City, holding that the hostile-work-environment claims were not administratively exhausted with the Equal Employment Opportunity Commission (EEOC) and that each of the failure-to-promote claims was either time-barred or not supported by sufficient evidence. For the reasons set forth below, we **AFFIRM** the judgment of the district court.

## I. BACKGROUND

**A.** **Factual background**

The four plaintiffs were all hired by the City as entry-level firefighters during the 1980s. Darryl Jones and Stephen Gibson have each been promoted only once, to the rank of engineer. Michael Jones has received two promotions—from firefighter to engineer and then to his current position as a lieutenant. Anthony Pasley has been promoted three times and is currently a captain. During their many years of service, each of the men has applied one or more times for a promotion that he did not ultimately receive. They allege that they possessed similar or superior qualifications to the white applicants who succeeded in being promoted. Accordingly, they complain that the City discriminated against them because of their race by failing to promote them.

The plaintiffs also allege that the City failed to eliminate a racially hostile work environment. They describe many incidents where white firefighters, including high-ranking members of the department, made racially derogatory remarks or engaged in hostile conduct directed at the plaintiffs and other black firefighters. A few of the incidents that they allege are described below.

During Stephen Gibson's initial training period, he was one of only two black trainees in his group. He alleges that his white supervisor imposed a harsher standard of physical performance on the two black trainees, particularly referencing an exercise in which the trainees were required to extinguish fires that were ignited in 55-gallon barrels containing gasoline and diesel fuel. Gibson's supervisor paired him with the other black trainee, and the two were required to perform the exercise four times. White trainees who followed were required to perform the task only once. Because Gibson and his partner went first, they experienced the fire at greater intensity than did the white

trainees. Gibson alleges that he sustained severe burns on his face. He also alleges that his supervisor laughed at the injuries and stated that "blacks were afraid of fire."

The plaintiffs' allegations also include the frequent use of racist language in the department, including offensive slurs and other discriminatory comments. Darryl Jones alleges that the same supervisor referred to above by Stephen Gibson once threatened, with rope in hand, to "string [Jones] up." The plaintiffs also describe a meeting of City officials at which candidates for the position of Chief were discussed. A black firefighter was among the applicants, and one official at the meeting allegedly referred to that candidate by stating that no "rug head" would ever be promoted to Chief.

The plaintiffs further describe several incidents in which white firefighters, including a past Chief and a Deputy Chief, used the word "nigger" to refer to the plaintiffs and other black members of the fire department. On one such occasion, a white woman came to the fire station looking for her husband, who was a black firefighter. She told two white firefighters about marital problems that the couple was experiencing. When she left, one of the white firefighters was overheard saying to the other: "Well, that's what you get for marrying a nigger." Non-plaintiff firefighters, both white and black, as well as other City employees, corroborate the plaintiffs' allegations regarding these and many other incidents in which offensive and discriminatory language was used at the department.

**B.      EEOC charges**

The precise content of the various charges filed by the plaintiffs with the EEOC is key to the resolution of this case. We will therefore describe below each EEOC document that appears in the record.

3

Darryl Jones completed an EEOC intake form in September 2004. In it, he alleged discrimination on the basis of race, and he wrote that a City employee had "made the racial statement 'Rug Head' while the Fire Department was still in the process of selecting the new Fire Chief." Jones also stated that "Blacks are purposely being overlooked when it comes to promotion positions." He filed his first formal EEOC charge in January 2005. The charge states that, in July 2004, he received an "unfair evaluation rating that affect[ed] the percentage of raise [he was] to receive." He also alleged that the evaluation scores he received from his supervisor, Michael Jones, had been reduced by the Deputy Chief. In March 2005, Darryl Jones filed a second EEOC charge. He complained that "[t]he City Manager gave false information to the Williamson County Review Appeal Newspaper," and stated his belief that he was being discriminated against in retaliation for the filing of the previous EEOC charge.

Michael Jones filed his first EEOC charge in February 2005, alleging that he had been denied his 2004 annual evaluation. He also described the alleged reduction by the Deputy Chief of the evaluation score that he had given to Darryl Jones. In March 2005, Michael Jones filed another EEOC charge. It contained identical allegations to those in the charge filed by Darryl Jones that same month. Michael Jones filed his third and final EEOC charge in January 2006. That charge stated that he was "being denied promotion because of [his] race, Black, and [his] age, 47." It went on to describe the use by the City of a noncertified test for promotion purposes. "All four Black employees failed the test, but most of the White employees passed the test." The January 2006 charge then described the transfer of "a White administrative captain" to the "shift captain position without any required testing."

4

In June 2005, Stephen Gibson filed his one EEOC charge. The charge reads as follows:

I believe because of my race/Black, I have been subjected to a discriminatory selection process that has an adverse impact regarding promotional opportunities for blacks as a class. Less qualified whites are systematically promoted over qualified blacks when the Franklin Fire Department continues to change the promotional requirements/job descriptions to advance lesser qualified whites to the ranks of Captain and above.

Recently, a white city official made the racial comment that as long as he had anything to do with promotions, a rug head would never be in charge of a department of the Franklin Fire Department. . . .

The Franklin Fire Department discriminates against blacks as a class in promotional opportunities in violation of Title VII of the Civil Rights Act of 1964, as amended.

Anthony Pasley, the fourth and final plaintiff, completed an undated EEOC intake form. He wrote that "[o]ver the last few years we have witnessed different incident[s] in our department pertaining to blacks in our department. This complaint pertains to the hiring and promotional process in the City of Franklin Fire Department." Next, he described the addition of a written examination as a requirement in the promotional process, and the reduction in the years of service required as a lieutenant in order to be eligible for promotion to captain. He alleged that the latter change increased the number of white firefighters who were eligible for promotion, and that the overall process was changed to benefit white firefighters. Pasley also filed a formal charge with the EEOC in June 2005. In the charge he stated that "[f]rom the past few years until now, I have observed disparate treatment of blacks in hiring and promotion."

## C.    Procedural history

All four plaintiffs received right-to-sue letters from the EEOC after they filed their administrative charges. They filed separate complaints in the district court in August 2006, claiming

that the City discriminated against them because of their race by failing to promote them to higher positions within the Fire Department, in violation of 42 U.S.C. § 1981 (Count One); that the City subjected them to discrete acts of racial discrimination and to a racially hostile work environment, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* (Count Two); and that the City deprived them of employment opportunities because of their race in violation of the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101 *et seq.* (THRA) (Count Three). The four cases were consolidated for trial two months later.

After the parties completed discovery, the City moved for summary judgment. The district court granted the City's motion on all claims. Regarding Count One, the court determined that the § 1981 claim was barred because the plaintiffs did not plead a cause of action under § 1983, which provides the exclusive remedy for § 1981 claims brought against a municipality. *See Jett v. Dallas Indep. Sch. Dist.*, 591 U.S. 701, 733 (1989). The plaintiffs have not challenged this conclusion on appeal.

Nor do the plaintiffs present any detailed argument for reversing the district court's dismissal of their claims regarding various discrete acts of racial discrimination by the fire department, including lowered evaluation scores, disciplinary actions, and the lack of promotions. These claims were dismissed primarily because of the plaintiffs' failure to provide sufficient evidence to support key elements of their race-discrimination claims. The plaintiffs now argue that we should consider their allegations of discrete acts by the City as "evidence of a racially hostile environment."

Finally, the district court awarded summary judgment to the City on the hostile-work-environment claims brought pursuant to Title VII in Count Two and the THRA in Count Three. In

its opinion, the court reasoned that the plaintiffs had not exhausted their administrative remedies with respect to the hostile-work-environment claims. The plaintiffs challenge that conclusion on appeal.

## II. ANALYSIS

### A. Standard of review

We review de novo the district court's grant of summary judgment. *Int'l Union v. Cummins, Inc.*, 434 F.3d 478, 483 (6th Cir. 2006). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986).

### B. Hostile-work-environment claims

In order to establish a hostile-work-environment claim, a plaintiff must present evidence of harassment that "unreasonably interfer[es] with [his or] her work performance and creat[es] an objectively intimidating, hostile, or offensive work environment." *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008). We have little doubt that, but for the administrative-exhaustion requirement, the plaintiffs in this case presented sufficient evidence of hostile, racist behavior in their work environment to survive a motion for summary judgment on this claim. *See Baltimore v. City of*

7

*Franklin*, No. 3:06-0578, 2007 WL 2123906 at *14-15 (M.D. Tenn. July 20, 2007) (holding, in a companion case to the one before us, that evidence submitted by the black firefighter with the City of Franklin was enough to present a hostile-work-environment claim to a jury where the firefighter had alleged sufficient facts in his EEOC charge to exhaust his administrative remedies).

The issue presented here, however, is whether the present four plaintiffs exhausted their administrative remedies so that the district court could hear their hostile-work-environment claims. *See Strouss v. Mich. Dept. of Corrections*, 250 F.3d 336, 342 (6th Cir. 2001) (noting that district courts may not hear Title VII claims "unless the claimant explicitly files the claim in an EEOC charge or the claim can be reasonably expected to grow out of the EEOC charge."). In addition, we must consider whether the plaintiffs complied with the one-year statute of limitations under the THRA.

### 1.    Title VII

In granting summary judgment in favor of the City, the district court concluded that the EEOC charges filed by the plaintiffs did not include sufficient allegations to trigger an investigation of the allegedly hostile work environment. The court itemized the plaintiffs' various filings with the EEOC, discussed above, and stated that "[t]he EEOC would not have been prompted to investigate racially derogatory statements and epithets used against . . . African Americans in the Fire Department because no such racial harassment was reported to have occurred." For that reason, the court concluded that the plaintiffs had not exhausted their administrative remedies with respect to the hostile-work-environment claims.

The plaintiffs argue that they provided sufficient notice to the EEOC to satisfy the administrative-exhaustion requirement. But each of the plaintiffs' written filings with the EEOC focused on discrete acts of discrimination, such as the reduction of evaluation scores and the failure of the City to award promotions to the plaintiffs. Only one racist comment was mentioned—the "rug head" remark—and that comment was directly tied to the failure to promote one of the plaintiffs' black colleagues. The plaintiffs claim to have verbally notified EEOC officials about other facts that support their hostile-work-environment claim, but the record contains no evidence beyond bald, nonspecific assertions that they did so.

No decision in this circuit has held that EEOC charges regarding discrete acts of discrimination are alone sufficient to put the EEOC on notice of a hostile-work-environment claim. Several unpublished decisions of this court have in fact held to the contrary. *See, e.g.*, *Brown v. City of Cleveland*, No. 07-3535, 2008 WL 4372950 at *8 (6th Cir. Sept. 23, 2008) (holding that an EEOC investigation of a hostile work environment could not reasonably be expected to grow out of a charge describing the denials of a promotion and a handicapped parking space); *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 475 (6th Cir. April 22, 2008) ("[The plaintiff] failed to exhaust her hostile environment claim, as she offered no evidence that the EEOC actually investigated this claim or that such claims could reasonably be expected to grow out of the charge.").

Published decisions in at least two other circuits have reached similar conclusions. *See* *Chacko v. Patuxent Inst.*, 429 F.3d 505, 511 (4th Cir. 2005) ("The sharp differences between [the] evidence [presented for trial] and the allegations in [the plaintiff's] administrative charges compel the conclusion that he failed to exhaust his administrative remedies."); *Cheek v. Western & Southern*

9

*Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994) ("When an EEOC charge alleges a particular theory of discrimination, allegations of a different type of discrimination in a subsequent complaint are not reasonably related to them unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge."). In sum, we agree with the district court's conclusion that the plaintiffs did not alert the EEOC to the offensive incidents they now report. The district court therefore did not err in dismissing the plaintiffs' hostile-work-environment claims brought under Title VII.

### 2.  THRA

The plaintiffs also brought their hostile-work-environment claims under the THRA. Regarding the THRA, the district court concluded that the claims had not been filed within the one-year limitations period imposed by the statute. *See* Tenn. Code Ann. § 4-21-311(d). On appeal, the plaintiffs argue that, "[g]iven that [they] . . . filed suit within one (1) year of the last act in a hostile environment, their claims are timely." But they identify no specific facts probative of a hostile work environment that occurred during the year that preceded the filing of their complaints. Instead, they simply assert that, "[f]or purposes of computing the applicable period of time, it is important to note that Plaintiffs' claims for racial discrimination are under a 'hostile working environment theory.'" Because no allegations were made of specific incidents that occurred within the one-year period, we conclude that the THRA claims are time-barred. *See Brown v. City of Springhill*, No. 01:06-0098, 2008 WL 974729 at *4 (M.D. Tenn. April 8, 2008) (holding that where the plaintiff's allegations concerning a hostile work environment consist of facts that occurred more than one year before the filing of the complaint, such a claim is time-barred).

**C.** **Discrete acts of discrimination**

We now turn to the plaintiffs' claims that they suffered discrete acts of discrimination on the basis of their race. These claims consist of various evaluation scores that were allegedly reduced by white supervisors, numerous instances where the plaintiffs assert that they were not promoted because of their race, and one incident in which Darryl Jones contends that he was inappropriately disciplined for conduct that he says never occurred. The district court granted summary judgment on each of these claims after thoroughly analyzing each allegation.

Claims based on several of the discrete acts alleged by the plaintiffs were declared by the district court to be time-barred. Because the plaintiffs' EEOC charges were filed more than 300 days after each of these alleged acts, the claims are barred under Title VII. *See Amini v. Oberlin College*, 259 F.3d 493, 498 (6th Cir. 2001) (describing the "dual statute of limitations" under Title VII, pursuant to which an EEOC charge must be filed within 300 days of the discriminatory act in "deferral states," or within 180 days in other states); *Tartt v. City of Clarksville*, 149 F. App'x 456, 460 (6th Cir. 2005) (Tennessee is a "deferral state," meaning that the 300-day statute of limitations applies). Similarly, the plaintiffs filed their complaints in the district court more than one year after these alleged acts occurred, which bars the claims under the THRA. *See* Tenn. Code Ann. § 4-21-311(d).

Regarding the remaining allegations of discrete acts of race discrimination, the district court concluded that the plaintiffs had failed to establish a prima facie case. This was true either because there was insufficient proof to establish that the complained-of conduct was an adverse employment action or because the plaintiff who was denied a promotion could not show that he had equal or

11

superior qualifications to the successful candidates. The plaintiffs present no detailed argument on appeal to challenge these conclusions by the district court.

Addressing each of the alleged discrete acts individually would be duplicative of the district court's thorough analysis and would serve no jurisprudential purpose. Because we agree with that analysis, we adopt the district court's opinion on the plaintiffs' discrete claims of discrimination as our own.

## III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the judgment of the district court.