RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 10a0190p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

————————————

NAZEEH YOUNIS,

             *Plaintiff-Appellant,*

      *v.*

PINNACLE AIRLINES, INC.,

                *Defendant-Appellee.*

No. 08-6112

————

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 07-02356—Bernice B. Donald, District Judge.

Decided and Filed: June 30, 2010

Before: DAUGHTREY, GILMAN, and SUTTON, Circuit Judges.

————————————

**COUNSEL**

**ON BRIEF:** W. Chris Harrison, PINNACLE AIRLINES, INC. IN HOUSE COUNSEL, Memphis, Tennessee, for Appellee. Nazeeh Younis, Al-Ain, United Arab Emirates, pro se.

————————————

**OPINION**

————————————

MARTHA CRAIG DAUGHTREY, Circuit Judge. Plaintiff Nazeeh Younis appeals *pro se* from an order granting summary judgment to defendant Pinnacle Airlines in this action for employment discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2000e-17. The district court dismissed the plaintiff's disparate treatment and retaliation claims for failure to establish a *prima facie* case and his hostile-work-environment claim for failure to exhaust administrative remedies. We affirm, although we find it unnecessary to address the merits of the retaliation claim because it, like the claim of hostile work environment, was not administratively exhausted.

1

### FACTUAL AND PROCEDURAL BACKGROUND

Younis, an Arab-American and Muslim, began working as a pilot for Pinnacle Airlines as a first officer in September 2002. He was promoted to captain in 2004. In September 2005, Pinnacle terminated him, citing poor performance. Younis filed a complaint with the Equal Employment Opportunity Commission (EEOC) in December of that year, alleging discrimination based on his religion and national origin. After the issuance of a right-to-sue letter, he filed this action in federal district court, contending that he had been terminated by Pinnacle on the bases of national origin, race, and religion. He also alleged that he had been subjected to a hostile work environment and that his discharge was retaliatory.

Younis cited several offensive remarks made to him during his tenure with Pinnacle, the first of which occurred during a 2002 training session with his instructor, Terry Harvell. Younis said that when he disagreed with Harvell about a particular maneuver, Harvell replied, "You are not going to f***ing teach me how to do this VOR DME approach." He also recalled that on June 23, 2005, while he was taking the oral-examination portion of a proficiency check, Harvell interrupted, called him a "boy," and asked, "[W]ho gave you a license to fly a plane?" In August 2005, Younis alleged, First Officer Jonathan Harvey, a white pilot who was his subordinate, made a negative comment about Younis's accent. That same month, when Younis questioned whether Harvey had properly executed a command, Harvey allegedly responded, "Boy, I got it right."

In its successful motion for summary judgment, Pinnacle maintained that Younis was terminated for poor performance. At that time, Pinnacle employed two types of testing to evaluate its pilots' flying skills: line checks and proficiency checks. Line checks, which were live, were required for captains and occurred annually. Proficiency checks, which were simulated, applied to all pilots and occurred biannually. According to Pinnacle, Younis typically failed his tests on the first attempt. Pinnacle specifically cited a failed line check on August 22, 2005, and two subsequently failed proficiency checks. According to Younis, the tests were unreasonably complicated and consisted of unrealistic scenarios, and the results were, at times, inaccurate.

The district court granted summary judgment in the defendant's favor on each of the counts in the plaintiff's lawsuit. With regard to the hostile-work-environment claim, the court held that the plaintiff had failed to exhaust his administrative remedies. The district court further found that he could not establish discrimination based on religion or national origin because he could not identify a similarly situated employee outside those protected classes who had been treated more favorably than he had. And, finally, the court held that the plaintiff did not make out a *prima facie* case of retaliation.

## *DISCUSSION*

Summary judgment is proper only when there is "no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2). In deciding a motion for summary judgment, the district court must view the evidence and draw all reasonable inferences in favor of the non-moving party. *See Ziegler v. Aukerman*, 512 F.3d 777, 781 (6th Cir. 2008). To defeat a properly supported summary judgment motion, the non-moving party must "set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). We then review a district court's grant of summary judgment *de novo*. *See Ziegler*, 512 F.3d at 781.

### *Exhaustion of Remedies*

In designating the procedure for challenging prohibited employment discrimination under Title VII, Congress gave initial enforcement responsibility to the EEOC. Thus, an employee alleging employment discrimination in violation of the statute must first file an administrative charge with the EEOC within a certain time after the alleged wrongful act or acts. *See* 42 U.S.C. § 2000e-5(e)(1). The charge must be "sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b). As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge. *See* 42 U.S.C. § 2000e-5(f)(1); *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 47 (1974). This rule serves the dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion. *See id.* at 44. Hence, allowing a Title VII action to encompass claims outside the reach of the EEOC charges would deprive the charged party

of notice and would frustrate the EEOC's investigatory and conciliatory role. At the same time, because aggrieved employees  – and not attorneys – usually file charges with the EEOC, their *pro se* complaints are construed liberally, so that courts may also consider claims that are reasonably related to or grow out of the factual allegations in the EEOC charge. *See Randolph v. Ohio Dep't Youth Servs.*, 453 F.3d 724, 732 (6th Cir. 2006). As a result, "whe[n] facts related with respect to the charged claim would prompt the EEOC to investigate a different, uncharged claim, the plaintiff is not precluded from bringing suit on that claim." *Davis v. Sodexho*, 157 F.3d 460, 463 (6th Cir. 1998).

**Hostile-Work-Environment Claim**

The problem in this case is that in his EEOC filing, Younis did not allege a claim of hostile work environment, and he cited only discrete acts of alleged discrimination, limited to three or four isolated comments by his peers that occurred over a three-year period. In order to establish a claim of hostile work environment, however, a plaintiff must present evidence of harassment that "unreasonably interfer[es] with [his] work performance and creat[es] an objectively intimidating, hostile, or offensive work environment." *Grace v. USCAR*, 521 F.3d 655, 678 (6th Cir. 2008). As a result, we have suggested in several unreported cases that the inclusion in an EEOC charge of a discrete act or acts, standing alone, is insufficient to establish a hostile-work-environment claim for purposes of exhaustion.[1] We now hold that such evidence, cited in an EEOC charge to support a claim of disparate treatment, will not also support a subsequent, uncharged claim of hostile work environment "unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994) (hostile-work-environment claim based on sexual harassment cannot be reasonably inferred from allegations of sex discrimination in plaintiff's EEOC charge); *see also Chacko v. Patuxent Inst.*, 429 F.3d 505, 511 (4th Cir. 2005) ("The sharp differences between [the] evidence [presented at trial] and the allegations in [the

---

[1] *See, e.g., Jones v. City of Franklin*, 309 F. App'x 938, 943-44 (6th Cir.), *cert. denied*, 130 S. Ct. 800 (2009) (citing *Brown v. City of Cleveland*, 294 F. App'x 226, 234-35 (6th Cir. 2008) (holding that an EEOC investigation of a hostile work environment could not reasonably be expected to result from a charge describing the denials of a promotion and a handicapped parking space)); *Scott v. Eastman Chem. Co.*, 275 F. App'x 466, 475 (6th Cir. 2008) ("[The plaintiff] failed to exhaust her hostile environment claim, as she offered no evidence that the EEOC actually investigated this claim or that such claims could reasonably be expected to grow out of the charge.").

plaintiff's] administrative charges compel the conclusion that he failed to exhaust his administrative remedies.").

With regard to Younis's claim that he was the victim of a hostile work environment, that standard has clearly not been met. The allegations in Younis's complaint exceed the scope of his EEOC charge. As a result, Younis has not satisfied the requirement that an employee exhaust administrative remedies with regard to a claim of hostile work environment under Title VII before bringing suit on that claim in federal court. It therefore follows that the district court did not err in granting summary judgment on this claim.

**Retaliation Claim**

Younis's retaliation claim suffers from the same deficiency. Although the district court granted summary judgment on a different basis, we conclude as a threshold matter that the plaintiff also failed to exhaust his administrative remedies on this claim. The EEOC form included a specific check-off box to indicate a charge of retaliation. Although Younis marked other boxes on the form evincing an intent to charge discrimination based on religion and national origin, he did not indicate that he was alleging retaliation. Moreover, there is nothing in the narrative portion of the EEOC charge that could be interpreted as claiming retaliation, nor is there any language that would have put the EEOC or the employer on notice that Younis was alleging retaliation by Pinnacle. Indeed, the comment that Younis supposedly made on June 23, 2005, to Tommy Palmer, head of Pinnacle's quality assurance office, about Terry Harvell's alleged discriminatory statement to Younis that same day, is not mentioned anywhere in the EEOC carge, which is specifically limited to events that occurred between August 22 and September 13, 2005. We therefore conclude that summary judgment was proper on this claim, although for a different reason from the one cited by the district court.

### *Prima Facie Case*

**Disparate-Treatment Claim**

Title VII of the Civil Rights Act of 1964 prohibits an employer from "discriminat[ing] against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff may satisfy his burden of establishing such discrimination either by presenting direct evidence of discriminatory actions by the defendant or by showing the existence of circumstantial evidence that creates an inference of discrimination.

Direct evidence, if believed, requires a conclusion by the fact-finder that unlawful discrimination was at least a "motivating factor" for the employer's actions. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 570 (6th Cir. 2003) (*en banc*). In this case, the only direct evidence of discrimination alleged in Younis's complaint consisted of the few disparaging comments made to Younis by Harvell, his flight instructor, and by Harvey, his subordinate first officer. Because the record wholly fails to link them in any way to the decision to terminate Younis, we conclude that those remarks do not constitute direct evidence of discrimination sufficient to prove a Title VII violation.

To establish a claim of discrimination indirectly, *i.e.*, by circumstantial evidence, a plaintiff must demonstrate (1) that he is a member of a protected class; (2) that he suffered an adverse employment action; (3) that he was qualified for the position; and (4) that a similarly-situated employee outside the protected class or classes was treated more favorably than he. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). The district court concluded that Younis was a member of a protected class and that he had suffered an adverse employment action. Without ruling on Younis's qualifications, the district court determined that even if Younis were qualified for his position, he had failed to make the requisite showing on the fourth factor. We agree.

To show that other pilots who held the rank of captain were treated more favorably than he, Younis offered the affidavit of David Wallace, an African-American

pilot who left Pinnacle's employment in September 2007. Wallace recounted discrimination that he believed he had suffered while flying for Pinnacle. It was offered to buttress Younis's assertions that Pinnacle favored its white pilots and subjected non-white pilots to more rigorous standards. However, in his affidavit, Wallace did not identify any particular white pilot as having received more favorable treatment than he or Younis did. His affidavit was, therefore, insufficient to satisfy the fourth prong of *McDonnell Douglas*.

Younis also asserted that Jonathan Harvey, the first officer with whom he flew on several occasions, was treated more favorably with respect to pilot testing. But this argument was undercut by the fact that captains and first officers were not subject to the same testing standards. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 583 (6th Cir. 1992) ("to be deemed 'similarly situated,' the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it"). It is thus clear that Younis did not establish a Title VII violation circumstantially because he could not show that he was treated in all relevant respects less favorably than a similarly situated Pinnacle pilot at the rank of captain. The district court did not err in granting summary judgment on this basis.

## *CONCLUSION*

For the reasons set out above, we AFFIRM the judgment of the district court.