RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0242p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────

JAY PEMBERTON,

          *Plaintiff-Appellant*,

    *v.*

BELL'S BREWERY, INC., identified on initiating documents as Bell's Comstock Brewery,

          *Defendant-Appellee*.

No. 24-1518

─────────────

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:22-cv-00739—Hala Y. Jarbou, District Judge.

Argued: March 18, 2025

Decided and Filed: September 4, 2025

Before: THAPAR, BUSH, and MURPHY, Circuit Judges.

─────────────

## COUNSEL

─────────────

**ARGUED:** Ryan E. Myers, CARLA D. AIKENS, P.L.C., Detroit, Michigan, for Appellant. Aaron D. Lindstrom, BARNES & THORNBURG, Grand Rapids, Michigan, for Appellee. **ON BRIEF:** Carla D. Aikens, CARLA D. AIKENS, P.L.C., Detroit, Michigan, for Appellant. Jennifer J. Stocker, BARNES & THORNBURG, Grand Rapids, Michigan, for Appellee.

─────────────

## OPINION

─────────────

JOHN K. BUSH, Circuit Judge. Jay Pemberton brought federal and state claims against his former employer, Bell's Brewery. He claims the Brewery failed to accommodate him,

discriminated against him based on his age and disability, and retaliated against him for engaging in protected activity—all in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101; Michigan's Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1202; Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The district court granted summary judgment to the Brewery, holding that Pemberton failed to timely exhaust his administrative remedies for certain claims and failed to establish pretext for others. On appeal, we are tasked with addressing, among other things, the adequacy of his Charge of Discrimination filed with the Equal Employment Opportunity Commission and the prima facie requirements for disability discrimination claims. Because the district court did not err in granting the Brewery's motion for summary judgment, we **AFFIRM**.

## I.

### A.    Pemberton's Employment at Bell's Brewery

Bell's Brewery hired Pemberton as a packager in March 2002. After five years in that position, the Brewery promoted him to packaging manager. But Pemberton aspired to work in the brewing department. So in 2010, he voluntarily took a pay cut to move into that department when the opportunity presented itself. By 2012, he was again promoted, this time to senior brewer.

The senior brewer position is physically demanding. The job description cites "frequently" lifting and moving objects "up to 25 lbs" and "occasionally" doing the same for weights of "55 lbs" as necessary job duties. According to the Brewery, the role was even more strenuous than described because there was no upper weight or frequency limit on lifting, dragging, or carrying heavy objects.

This lifting led Pemberton to injure his back while at work in December 2018. It was his second back injury, the first having occurred in 2016. After the second injury, the Brewery enrolled Pemberton into its workers' compensation program, providing him medical care and wage loss benefits.

From December 2018 to November 2019, Pemberton's physicians imposed several physical restrictions on his ability to work. These included avoiding continuous standing and refraining from lifting or pushing anything over ten pounds. Because of these restrictions, Pemberton could not perform the essential lifting and carrying duties required by the job. So, the Brewery accommodated him by assigning him "light duty" work within the brewhouse. This work included "taking temperature and pressure checks, and verifying paperwork for racks, fuge and dry hops." R. 80-4, Johnson Decl., PageID 1148–49**.**

Eventually, the Brewery ran out of light duty work for Pemberton. As a solution, Pemberton asked if the Brewery could create a new position for him as a "Field Marketing and Research Specialist." The Brewery declined to do so, in part because it "did not have a business need for that position." *Id.* Instead, the Brewery placed him on leave from March to May 2019, during which he received two-thirds his full-time wages.

By mid-May 2019, Pemberton accepted an offer to take part in the Brewery's "Transitional Work Program," through which he was paid his full-time wages while working for a non-profit partner. He participated in this program for roughly two months, before requesting to be removed. The Brewery then placed Pemberton back on leave while it continued to explore alternative work options that would sufficiently accommodate his prolonged medical restrictions.

Pemberton returned to work in October 2019 after the Brewery shifted some of his duties to other employees, allowing him to resume light duty work. And the next month, November 2019, his physician cleared Pemberton to resume his role as senior brewer without any physical restrictions.

**B.      The Brewery's Investigation of Josh Pohlman**

In July 2018, before Pemberton's second back injury, Josh Pohlman became Pemberton's shift lead. As shift lead, Pohlman was required to evaluate Pemberton's work performance annually. Pemberton's first review was apparently unfavorable, and he complained to HR in February 2019 about how Pohlman conducted the review. He specifically complained about Pohlman's use of "shift notes," which a different employee testified was abnormal.

During its investigation of Pemberton's complaint about his supervisor, the Brewery discovered that Pohlman had disparaged Pemberton's back condition. For example, Pohlman told Pemberton that the team considered him to be a "cancer" and that many coworkers thought he was "milking" his injury. R. 80-3, Schuiling Dep., PageID 1059; R.80-1, Pemberton Dep., PageID 837.

The investigation initially resulted in Pemberton's removal from Pohlman's supervision. The Brewery eventually terminated Pohlman in March 2019 for his inappropriate comments about Pemberton's medical condition and for impeding the investigation. In June 2020, Pohlman called Pemberton as a witness in a lawsuit that he had filed against the Brewery for wrongful termination.

**C.      Pemberton's Job Applications**

Throughout his tenure at the Brewery, Pemberton applied for several internal positions, though he was rejected for many of them. Two of those applications were for the "Field Service Representative" (FSR) role in 2020 and the "Technical Brewer" position in 2021. The Brewery ultimately hired two other internal candidates for the jobs. It explained that Pemberton was not selected for the FSR role because he lacked sales experience, as it was primarily a sales-based position. Instead, the Brewery chose Michael Dickinson, largely because of his prior experience as a distributor and the exceptional sales training he had received in that job. And as for filling the technical brewer position, the Brewery passed over Pemberton for Scott Lusk, whose qualifications included a Bachelor of Science in Beverage Science and experience volunteering on projects typically managed by technical brewers.

**D.     The Brewery's Investigation of Pemberton**

In May 2021 an employee, referred to as EE-1, complained to the Brewery that Pemberton had made a series of inappropriate remarks to him. EE-1 served in the United States Marine Corps and struggled with suicidal ideation, making several attempts on his life after returning from active duty. Pemberton allegedly asked him disturbing questions, such as how many people he had killed during his service and how much money his family would receive if he ended his life. The Brewery launched an investigation into EE-1's claims.

As the investigation unfolded, more allegations against Pemberton arose. A witness came forward alleging that Pemberton had made a sexually inappropriate comment about another employee, EE-2. And the Brewery learned of a recent Facebook post made by another employee, EE-3, linking Pemberton to date rape occurring at the Brewery by its employees.

In May 2021, the Brewery suspended Pemberton without pay while the investigation continued. Pemberton was not told the specific reasons for his suspension. In the suspension meeting, Pemberton asked if the investigation was related to EE-3's Facebook post. The Brewery told him that his suspension was not about EE-3's complaint, which was being handled separately by a third-party investigator.

In early June 2021, the Brewery interviewed Pemberton about the allegations involving EE-1 and EE-2. Pemberton admitted to asking EE-1 about insurance benefits in the event of suicide but denied the claims associated with EE-2. He also denied asking about EE-1's "kill count" during his military service.

The Brewery's investigation found no corroborating evidence to support or verify EE-2's allegations, but the company still decided Pemberton's admitted and alleged comments toward EE-1 warranted disciplinary action. Additionally, the Brewery informed the third-party investigator handling EE-3's date rape allegations that Pemberton might have relevant information.

Soon after the conclusion of the investigation of EE-1's and EE-2's allegations, the Brewery informed Pemberton that he was considered a "toxic employee" and presented him with

two options: either sign a "last chance agreement" (the Agreement) or accept a severance package. The Agreement would require Pemberton to, among other things, accept a demotion and undergo mandatory training, but he would not receive a pay cut. On the other hand, the severance package offered nine months' salary, continued health insurance, and outplacement services, but it also required him to participate in the third-party investigation into EE-3's allegations.

Pemberton hesitated to accept the Agreement, finding the prospect of returning to work at the Brewery uncomfortable. So, he attempted to negotiate a better severance package. He secured a pay increase to a full year's salary and extended the health insurance coverage. Nonetheless, in July 2021, Pemberton rejected the severance offer and chose not to return to work at the Brewery.

### E.    Pemberton's Pursuit of Legal Remedies

Pemberton first filed an Inquiry Questionnaire with the Equal Employment Opportunity Commission (EEOC) on June 21, 2021. The Questionnaire included an attached timeline comprised of multiple pages of factual allegations. One relevant passage reads:

> After several weeks, no more than 4, I was told I could not return to my light duty position and was sent home . . . . I have since discovered other employees that have been injured on the job continued light duty for months, so much so that new roles/positions have been created for them. Positions were created to retain them full time without injury risk.

R. 80-1, Inquiry Questionnaire, PageID 923. The timeline organized the facts by protected characteristic (i.e., age, disability, and retaliation) and by the year the events took place, ranging from 2010 to 2021.

On March 22, 2022, Pemberton filed a formal Charge of Discrimination (Charge) with the EEOC, alleging that the Brewery's discriminatory conduct occurred between December 1, 2018, and May 26, 2021. He amended it the next day. The substance of that Charge, as amended, is important to this appeal. It reads:

> I began working for Bells Brewery Company on or about March 14, 2002, as a Packager. I was promoted to Senior Brewer in or around September 2012. In or

around December 2018, I was injured resulting from an unsafe work practice introduced in or around November 2018. I was put on light duty in or around October 2019 as a result from this injury and was sent home until I was completely recovered. Upon my return I was seen as milking it by other co-workers, which caused tension among the workforce. When applying for Technical Brewer in or around December 2020 or January 2021, I was told I was not hungry enough, nor did I possess a four-year degree. In or around May 2021, I had a conversation with Brewer [EE-1] regarding suicide and life insurance policies. I was informed by Emily Schuling of Human Resources that this conversation was creating a toxic and hostile work environment and I was told I needed to step down from Senior Brewer to Brewer. I was never fired, nor did I quit. I believe I was discriminated against by being demoted due to my disabilities, and passed up for a promotion because of my age, 43. I believe I was discriminated against because of my disability, and retaliated against for engaging in protected activity, in violation of Title I of the Americans with Disabilities Act of 1990, as amended, and because of my age (43) in violation of the Age Discrimination in Employment Act of 1967, as amended.

R. 80-1, Charge of Discrimination, PageID.932.

The EEOC issued Pemberton a Right to Sue Letter in May 2022. He filed the instant lawsuit on August 12, 2022. And he brought claims under the Americans with Disabilities Act, 42 U.S.C. § 12101; Michigan's Persons with Disabilities Civil Rights Act, Mich. Comp. Laws § 37.1201; Michigan's Elliott-Larsen Civil Rights Act, Mich. Comp. Laws § 37.2101; and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. The Brewery moved for summary judgment, and the district court ruled in favor of the Brewery on all counts. The court held that Pemberton failed to exhaust or timely exhaust his administrative remedies for certain claims, and that for other claims, he lacked evidence to establish pretext.

Pemberton timely appealed.

## II.

We review de novo a district court's grant of summary judgment. *Hyman v. Lewis*, 27 F.4th 1233, 1237 (6th Cir. 2022). We will affirm summary judgment if, after viewing the facts in the light most favorable to the nonmovant, "no genuine dispute as to any material fact" exists, and "the movant is entitled to judgment as a matter of law." Fed R. Civ. P. 56(a); *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 231 (2015). A genuine dispute of material fact exists "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). We analyze whether Pemberton's claims survive this standard below.

**III.**

**A.     Americans with Disabilities Act**

Pemberton brought three claims under the Americans with Disabilities Act (ADA): Count I (Failure to Accommodate), Count III (Retaliation), and Count V (Discrimination). The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to" the "terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). Under the statute, "discrimination" includes a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." *Id.* § 12112(b)(5)(A). But an accommodation is not reasonable if it would "impose an undue hardship on the operation of the business," in which case the employer or "covered entity" need not accommodate. *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 372 (2001) (quoting 42 U.S.C. § 12112(b)(5)(A)).

The ADA also forbids retaliating against individuals who oppose unlawful practices or participate in investigations or proceedings under the Act. 42 U.S.C. § 12203(a) (retaliation). The "ADA is not, however, a catchall statute creating a cause of action for any workplace retaliation, but protects individuals only from retaliation for engaging in . . . activity covered by the ADA." *Rorrer v. City of Stow*, 743 F.3d 1025, 1046 (6th Cir. 2014).

Before a plaintiff can bring suit in federal court alleging ADA violations, he must exhaust his administrative remedies by filing a charge of discrimination with the EEOC. *Bullington v. Bedford Cnty.*, 905 F.3d 467, 469–70 (6th Cir. 2018). The claim must also be timely. The plaintiff has 300 days from the alleged discrimination to file a charge or else lose the right to bring the claim. *See Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000).

As explained below, these requirements doom Pemberton's ADA claims for failure to accommodate, retaliation, and discrimination.

### 1. *Failure to Accommodate*

The Brewery sought summary judgment on the failure-to-accommodate claim based on Pemberton's failure to (1) explicitly mention this claim in his EEOC Charge and (2) bring the claim in a timely fashion. *See Pemberton v. Bell's Brewery, Inc.*, No. 22-739, 2024 WL 1152267, at *5–6 (W.D. Mich. Mar. 18, 2024). In other words, he did not properly exhaust his claim by including it in his Charge, and even if he did, it was untimely. The district court disagreed with the Brewery's first argument but accepted the second. We agree with the Brewery that Pemberton's omission of a failure-to-accommodate claim in his Charge is fatal to his claim. We also agree that, in any event, that claim would be untimely.

#### a. *Exhaustion*

Start with exhaustion. The district court read "the Questionnaire and the Charge together" to conclude that "Pemberton sufficiently included the accommodation claim" in his Charge as amended. *Id.* at *5. The court acknowledged that the Amended Charge contained no mention of the Brewery's failure to accommodate. *Id.* But because Pemberton's Inquiry Questionnaire referenced reasonable accommodations that he had previously received and that other employees had enjoyed for longer periods, the district court decided Pemberton had cleared the first exhaustion-defense hurdle—namely, that he include the failure-to-accommodate claim in his Charge. *See id.* We respectfully disagree with the district court. Pemberton did not do enough to meet the procedural requirements to properly state a failure-to-accommodate claim, which is a prerequisite to properly exhaust this claim before the EEOC.

The ADA tasks the EEOC with exercising "the same enforcement powers, remedies, and procedures that are set forth in Title VII of the Civil Rights Act of 1964 when it is enforcing the ADA's prohibitions against employment discrimination on the basis of disability." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 285 (2002); *see* 42 U.S.C. § 12117(a). Consequently, we can rely on Title VII and its caselaw to analyze exhaustion in the ADA context.[1] Title VII says that employees must first exhaust their administrative remedies before bringing their claim and, in

---

[1]We also rely on ADEA cases, given the EEOC administers that statute and the ADEA and Title VII share a "common purpose" and set up a similar "remedial scheme." *Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402–03 (2008).

order to do so, they must file the claim in an EEOC "charge." *See Williams v. CSX Transp. Co.*, 643 F.3d 502, 509 (6th Cir. 2011). The ADA incorporates that requirement in 42 U.S.C. § 12117(a).[2]

We therefore can review Pemberton's claim only if either (1) he "explicitly file[d] the claim in an EEOC charge or [(2)] the claim [could] be reasonably expected to grow out of the EEOC charge." *Strouss v. Mich. Dep't of Corr.*, 250 F.3d 336, 342 (6th Cir. 2001). The first avenue for review would be satisfied if Pemberton expressly stated his failure-to-accommodate claim somewhere in his Charge. *See Hayes v. Clariant Plastics & Coatings USA, Inc.*, 144 F.4th 850, 865 (6th Cir. 2025); *see also Abeita v. TransAmerica Mailings, Inc.*, 159 F.3d 246, 254 n.6 (6th Cir. 1998) (holding employee who said she "was treated differently than males, harassed, and discharged because of [her] sex, female" in her charge did not explicitly file a retaliation claim as she "neither checked the retaliation box nor described anything that indicates that she might have a retaliation claim"). Such explicit filing would give notice to the EEOC and the employer as to the employee's grievances.

The second basis for our review asks whether, notwithstanding the absence of an explicit filing, the EEOC submission included "facts related" to a claim that the employee did properly charge. The question is whether those reasonably related facts "would prompt the EEOC to investigate a different, uncharged claim." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010). This softens the explicit filing requirement in recognition that "aggrieved employees—and not attorneys—usually file charges with the EEOC," and "*pro se* complaints are construed liberally." *Id.* at 361–62; *see also Fed. Express Corp. v. Holowecki*, 552 U.S. 389, 402 (2008) (recognizing "laypersons, rather than lawyers, are expected to initiate the process").

But even pro se parties have obligations they must meet under the "facts related" approach. In *Younis*, for example, we held against a pro se employee who tried to bring a hostile-work-environment claim in federal court after only citing facts to support disparate

---

[2]"The powers, remedies, and procedures set forth in sections 2000e-4, 2000e-5, 2000e-6, 2000e-8, and 2000e-9 of this title shall be the powers, remedies, and procedures this subchapter provides to the Commission, to the Attorney General, or to any person alleging discrimination on the basis of disability in violation of any provision of this chapter, or regulations promulgated under section 12116 of this title, concerning employment." 42 U.S.C. § 12117(a).

treatment in his EEOC charge of discrimination without explicitly stating that claim in the charge. *See* 610 F.3d at 362. The employee failed to show harassment unreasonably interfered with his work and created an objectively hostile environment, offering "only discrete acts of alleged discrimination, limited to three or four isolated comments by his peers that occurred over a three-year period." *Id.* We held that this "evidence, cited in an EEOC charge to support a claim of disparate treatment, [did] not also support a subsequent, uncharged claim of hostile work environment." *Id.* And even more on point, we held in *Jones v. Sumser Retirement Village* that a failure-to-accommodate claim did "not reasonably grow out of the facts and claims" the plaintiff asserted in a termination claim. 209 F.3d 851, 853 (6th Cir. 2000).

Based on standards recognized in cases like *Younis* and *Jones*, Pemberton did not do enough to raise his accommodation claim with the EEOC.

First, he did not explicitly file the claim with the agency. The district court acknowledged as much, stating that Pemberton's "Amended Charge contained no mention of a failure to accommodate" claim. *Pemberton*, 2024 WL 1152267, at *5. And Pemberton does not argue otherwise.

Second, his claim does not reasonably relate to or grow out of the facts alleged in his Charge. As an initial matter, Pemberton did not proceed pro se: he had already engaged counsel at the time of filing and even lists her name (Carla Aikens).[3] But even under the pro se standard, he did not state enough to raise the failure-to-accommodate claim. The only portions of his Charge that even arguably suggest facts for this claim are his statements that he was (1) "put on light duty in or around October 2019 as a result from this injury and was sent home until [he] was completely recovered" and (2) denied a particular new position because he was "not hungry enough" and lacked "a four-year degree." R. 80-1, Charge of Discrimination, PageID 932. These limited statements were insufficient to prompt the EEOC, or sufficiently notify it, to investigate a different, uncharged failure-to-accommodate claim. If anything, they suggest that the Brewery made reasonable efforts to accommodate Pemberton.

---

[3]Ms. Aikens is the same counsel representing Pemberton on appeal.

In response, Pemberton argues that his accommodation claim is "reasonably expected to be part of" his Charge because it "arises out of the same core discrimination." Reply Br. at 5. Not so. That position misstates the law and unduly relaxes the exhaustion requirement. As Pemberton neither explicitly filed a failure-to-accommodate claim nor stated facts that the claim reasonably related to or grew out of his charge, his accommodation claim fails.

Our analysis does not change when we consider *Holowecki*, 552 U.S. at 392. It is true that *Holowecki* recognizes that "a wide range of documents might be classified as charges." *Id.* at 402. This allows courts to interpret intake forms that accompany charges as "charges" in their own right, and to assess their contents to decide whether the employee explicitly filed a claim, or it reasonably grew from the newly recognized charge. But *Holowecki* has its limits. It does not direct that we ignore the EEOC's administrative scheme.[4]

As a general matter, employees should include their claims in their formal charges. *See, e.g.*, *Younis*, 610 F.3d at 361. But if they do not, it is "possible under certain circumstances for an intake questionnaire itself to constitute a charge." *Russ v. Memphis Light Gas & Water Div.*, 720 F. App'x 229, 237 (6th Cir. 2017) (citing *Holowecki*, 552 U.S. at 389). A pre-charge form, here Pemberton's Inquiry Questionnaire, can be a charge if it is (1) "verified"—that is, submitted under oath or penalty of perjury, 29 C.F.R. § 1601.3(a); (2) contains information that is "sufficiently precise to identify the parties, and to describe generally the action or practices complained of," *id.* § 1601.12(b); and (3) complies with *Holowecki*. *Williams*, 643 F.3d at 509. But Pemberton fails to meet any of these requirements here.

We will address those requirements in reverse order, starting with whether Pemberton's Inquiry Questionnaire complies with *Holowecki*. Under *Holowecki*, "an 'objective observer' must believe that the filing 'taken as a whole' suggests that the employee 'requests the agency to activate its machinery and remedial processes.'" *Id.* (quoting *Holowecki*, 552 U.S. at 398, 402);

---

[4]*Holowecki* relied on *Auer* deference to resolve certain questions, but the relevant part of the opinion for this case relied on *Skidmore* deference (which survived both *Kisor* and *Loper Bright*). *See Holowecki*, 552 U.S. at 402; *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944); *Auer v. Robbins*, 519 U.S. 452 (1997); *Kisor v. Wilkie*, 588 U.S. 558 (2019); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024); *see also United States v. Prather*, 138 F.4th 963, 975 (6th Cir. 2025) ("Whatever the future of *Auer* deference, as a court of appeals, we are not in the business of overruling Supreme Court precedent. . . . *Auer* (and *Kisor*) remain good law."). Therefore, we are still bound by the Supreme Court's relevant holding in *Holowecki* and need not engage in a new analysis.

*see Russ*, 720 F. App'x at 237–38 (deciding questionnaire was not a charge because it lacked language that could be construed as asking the EEOC to take action against defendant); *see also Kindred v. Memphis Light, Gas & Water*, No. 22-5360, 2023 WL 3158951, at *5 (6th Cir. Feb. 27, 2023) (order), *cert. denied*, 144 S. Ct. 2637 (2024) (holding employee's pre-charge inquiry form was not a charge under the ADEA because it expressly stated that it was not intended as a charge and instead a tool to assess whether an employee's allegations fell within the scope of employment discrimination laws). So, even though *Holowecki* broadens the traditional "explicitly file or reasonably grow out of" rule for exhausting administrative remedies by liberalizing the definition of a "charge," there remains an "additional requirement": that the filing must invoke the EEOC's remedial processes. *Williams*, 643 F.3d at 508 (citing *Holowecki*, 522 U.S. at 398).

And it is this requisite—the invocation of EEOC's authority to address the claim—that Pemberton fails to satisfy. The closest he comes is in one district court-cited statement from the attached timeline to his Inquiry Questionnaire:

> After several weeks, no more than 4, I was told I could not return to my light duty position and was sent home . . . . I have since discovered other employees that have been injured on the job continued light duty for months, so much so that new roles/positions have been created for them. Positions were created to retain them full time without injury risk.

R. 80-1, Inquiry Questionnaire, PageID 923. This language describes Pemberton's treatment compared to other employees. But nowhere does it actually request that the EEOC invoke its processes to remediate the employer's conduct.

Indeed, rather than request the EEOC to take action, the Inquiry Questionnaire explicitly states that it is *not* a charge. Just as in *Kindred*, the top of the first page of Pemberton's Inquiry Questionnaire clearly states, "This Questionnaire is not a Charge of Discrimination." R. 80-1, Inquiry Questionnaire, PageID 918. And every ensuing page of the Questionnaire reiterates in bolded, capitalized letters that "**THIS QUESTIONNAIRE IS NOT A CHARGE OF DISCRIMINATION**." *Id.* at PageID 918–21. Finally, the "Privacy Act Statement" on the Questionnaire's last page states that the form's "principal purpose" is to "solicit information about claims of employment discrimination, determine whether the EEOC has jurisdiction over

those claims, and provide charge counseling, if appropriate." *Id.* at PageID 921. It expressly disclaims it is a charge and instead emphasizes that Pemberton "must" take an additional step to "file a charge of discrimination." *Id.*

In finding that Pemberton falls short in stating an accommodation claim, we garner further support in the fact that "more than half of the filings the EEOC receives each year are mere informational inquiries rather than enforcement requests." *Williams*, 643 F.3d at 508. The Questionnaire, after all, is an "*Inquiry* Questionnaire." The EEOC uses initial filings like Pemberton's as a screening tool to assess whether a claim warrants further investigation. *See id.* Until the agency decides there is sufficient cause to proceed, the Brewery has not received official notice or had an opportunity to respond to Pemberton's claim. A questionnaire gathers only preliminary information and rarely alleges specific legal violations. *See, e.g.*, R. 80-1, Inquiry Questionnaire, PageID 918–28. A charge of discrimination, by contrast, formally asserts claims, triggers enforcement procedures, and puts the employer on notice of potential legal action. *See Holowecki*, 552 U.S. at 393. That way, a charge gives the EEOC and the employer a chance to "settle the dispute through conference, conciliation, and persuasion." *Younis*, 610 F.3d at 361. Because Pemberton's Inquiry Questionnaire explicitly reads like the form itself says—as an information inquiry rather than an enforcement request—neither the Brewery nor the EEOC has had this opportunity to resolve the failure-to-accommodate claim through the EEOC process.

The facts in *Holowecki* and *Williams* reinforce our decision that Pemberton's Questionnaire is not an enforcement request for an accommodation claim. In *Holowecki*, the plaintiff wanted the Court to construe her intake questionnaire as a charge because she did not file her charge of discrimination before the statutory deadline. 552 U.S. at 394. The Court did so, in large part because the employee had attached an affidavit to her intake questionnaire, asking the EEOC to "please force [her employer] to end their age discrimination plan so [she and her coworkers] can finish out [their] careers absent the unfairness and hostile work environment created within their application of Best Practice/High-Velocity Culture Change." *Id.* at 405 (cleaned up). She also had marked the "Yes" box on the intake questionnaire giving consent for the agency to disclose her identity to her employer. *Id.* at 406. But sans the employee's affidavit

expressly requesting relief, the Court noted that it "might agree" that the intake questionnaire's "statements do not request action." *Id.* at 404.

Likewise, in *Williams*, our court noted the importance of claimants actually requesting relief. There, the pro se plaintiff submitted a "Charge of Discrimination" and "Charge Information Form" to the EEOC and wanted us to recognize them as charges for her sexually-hostile-work-environment claim. 643 F.3d at 509–10. We decided both were charges. The Charge Information Form, specifically, satisfied *Holowecki* because Williams "expressly stated" that her employer's "facility was 'a very hostile work environment' and that she 'felt that CSX owed her money damages.'" *Id.* at 510 (cleaned up). These statements and request for money damages indicated to an objective observer that Williams "sought the EEOC to activate its remedial machinery, rather than simply obtain information." *Id.* at 509.

Unlike the filings in *Holowecki* and *Williams*, Pemberton's Charge and Inquiry Questionnaire did not invoke EEOC remediation of the claim at issue—here, a failure to accommodate. An objective observer would not view Pemberton's vague references to prior accommodations, whether granted to him or to his coworkers for longer durations, as a request for the EEOC to activate its machinery and remedial processes. There is no call to action or request for the agency to act. When considering the filing as a whole—particularly, its unequivocal statement that "**THIS QUESTIONNAIRE IS NOT A CHARGE OF DISCRIMINATION**"—Pemberton did not trigger an EEOC response related to his employer's failure to accommodate.

And even if we concluded otherwise, Pemberton's Questionnaire fails *Williams*'s other requirements. The filing is unverified. Pemberton did not submit it under oath or penalty of perjury. *See* R. 80-1, Inquiry Questionnaire, PageID 921. Nor did he sign the Questionnaire. Nothing in the filing's contents suggests that Pemberton meets this requirement.

True, a second, verified and timely charge can amend an employee's first filing. *See Williams*, 643 F.3d at 509–10. But Pemberton did not do that. In *Williams*, the plaintiff's second filing (a Charge of Discrimination) was a sufficient charge and verified: "Williams signed her name at the bottom of the filing" and "declared under penalty of perjury that" its contents were

"true and correct." *Id.* at 510 (cleaned up). The second filing also attested to the truth of Williams's first filing. *See id.* Here, by contrast, Pemberton's second filing (his Charge of Discrimination) did not incorporate the facts stated in his Inquiry Questionnaire. Also, as discussed more below, Pemberton's Charge missed the statutory deadline and is thus not an adequate charge. *See* R. 80-1, Charge of Discrimination, PageID 932. So, although *Williams* allows a charge to cure a verification defect in a pre-charge if the subsequent filing is in fact a timely charge and the two filings allege the same facts and legal violations, that was not the case here. So, Pemberton's filing remains unverified.

Pemberton's Questionnaire also fails the EEOC's specificity requirements, *Williams*'s second prong. 643 F.3d at 509; 29 C.F.R. § 1601.12(b). This is a regulatory substantive content requirement. The filing does not describe with enough precision the action or practices relating to the Brewery's failure to accommodate his back injury. *See* R. 80-1, Inquiry Questionnaire, PageID 918–28. Our case is not like *Williams*, where the employee's charge information form "identified" the employer "and its employee" as "the offenders" and recounted the violation "in detail" and with quotations over the "course of three pages." 643 F.3d at 509. All that Pemberton's Questionnaire said was (1) he "was told [he] could not return to [his] light duty position and was sent home" after "several weeks" of "light duty" work and (2) he has "since discovered other employees that have been injured on the job continued light duty for months, so much so that new roles/positions have been created for them." R. 80-1, Intake Questionnaire, PageID 923. He does not say who these employees are or what their new roles or positions were, nor does he provide a general description of the practices he complains about. That falls short of the regulatory requirement. *See* 29 C.F.R. § 1601.12(b).

Failing any of the three *Williams* requirements would be enough for us to rule against Pemberton's exhaustion argument. He fails all three. Because Pemberton's Charge of Discrimination did not allege failure to accommodate and his pre-charge inquiry form cannot be considered a charge, he did not exhaust his administrative remedies.

### b. *Timeliness*

The district court resolved Pemberton's failure-to-accommodate claim by deciding it was time barred. We agree. Even if he had filed his accommodation claim in his Charge, Pemberton did not do so in a timely fashion.

A "claimant who wishes to bring a lawsuit claiming a violation of the ADA must file a charge of discrimination within 300 days of the alleged discrimination." *Parry*, 236 F.3d at 309; *see* 42 U.S.C. § 12117(a) (noting procedures from 42 U.S.C. § 2000e–5(e)(1) apply to ADA claims). And if the employee does not possess a right-to-sue letter from the EEOC, he "has not exhausted his" administrative remedies. *Parry*, 236 F.3d at 309.

Pemberton filed his Charge in late March of 2022. That means he needed to allege in an appropriate EEOC filing that the Brewery's discrimination occurred in or after late May of 2021 to satisfy the 300-days-prior rule. He did not, for a couple of reasons. First, he does not cite to any time when he was discriminated against based on a failure to accommodate, let alone a time after May 2021. The closest Pemberton comes to suggesting dissatisfaction with the Brewery's accommodations in any EEOC filing is in his Questionnaire—not his Charge, when he alleges that the Brewery created positions "to retain" other employees "full time without injury risk," but not him. R. 80-1, Questionnaire, PageID 923. Even then, Pemberton does not say when he became aware of the differing treatment or when it occurred.

Second, September 2020 would be the latest he could have filed a timely charge based on his facts. From the record, we know that Pemberton's physical restrictions were fully lifted on November 26, 2019, when his physician cleared him to return to work at full capacity. *See* R. 80-4, Johnson Decl., PageID 1151. Pemberton returned to full duty work as a senior brewer and he neither needed nor sought any accommodation after this time. *Id.*; Pemberton Dep., R. 80-1, PageID 871–73, 908–09; R. 80-5, Dr. Kilmer Dep., PageID 1216–17, 1220. He filed neither the Questionnaire nor the Charge by September 2020 and therefore exceeded the 300-day limit. So, even if he had properly filed a failure-to-accommodate claim in an EEOC charge, Pemberton did not meet the ADA's statutory time requirements.

## 2. *Retaliation and Discrimination*

Pemberton assumes he timely exhausted his ADA retaliation and discrimination claims. *See* Appellant Br. at 12.[5] As exhaustion is not a jurisdictional question, *see Fort Bend Cnty. v. Davis*, 587 U.S. 541, 543 (2019), we instead skip to the merits and resolve the retaliation and discrimination claims on those grounds, as the district court did. We agree with that court that Pemberton lacks sufficient evidence for these claims to survive summary judgment.

The ADA makes it unlawful for an employer to "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). And it prohibits retaliation against individuals who "opposed any act or practice" the ADA makes unlawful or who "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under" the ADA. 42 U.S.C. § 12203(a). When a plaintiff lacks direct evidence of discrimination or retaliation, like here, we analyze the claims under *McDonnell Douglas*'s familiar burden-shifting framework. *See Rorrer*, 743 F.3d at 1046.

As plaintiff, Pemberton bears the initial burden of establishing a prima facie case of retaliation under the ADA. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To do so, he must establish that "(1) he engaged in activity protected under the ADA; (2) the employer knew of that activity; (3) the employer took an adverse action against [him]; and (4) there was a causal connection between the protected activity and the adverse action." *Rorrer*, 743 F.3d at 1046. By "protected activity," we mean an "action taken to protest or oppose a statutorily prohibited discrimination." *Id.*

An ADA discrimination claim also imposes a similar prima facie burden on the plaintiff. It requires that Pemberton show (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) the Brewery knew of his disability; (4) he suffered an adverse employment decision; and (5) there was a causal connection between the disability and the adverse action. *See Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 453 (6th Cir. 2004).

---

[5]His Charge asserts he "was discriminated against because of [his] disability and retaliated against for engaging in protected activity, in violation of Title I of the Americans with Disabilities Act of 1990, as amended." R 80-1, Charge of Discrimination, PageID 930, 932.

The causal connection prong for retaliation and discrimination ADA claims requires Pemberton to show that his protected disability activity (retaliation) or his disability (discrimination) is the "but-for" cause for the Brewery's adverse actions. *See Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc). He must "put forth some evidence to deduce a causal connection between the adverse action and protected activity," *Gray v. State Farm Mut. Auto. Ins. Co.*, 145 F.4th 630, 639 (6th Cir. 2025), that is "sufficient to raise the inference" that the discrimination or "protected activity was the likely reason for the adverse action," *Nguyen v. City of Cleveland*, 229 F.3d 559, 566 (6th Cir. 2000). To satisfy this requirement, we often look for things like temporal proximity between the protected activity and adverse action. *See, e.g.*, *Gray*, 145 F.4th at 639.

Pemberton cannot establish a prima facie case for retaliation. He says he engaged in protected activity when (1) "he served as a witness to details of sexual assault and harassment claims by his colleagues" and (2) "he complained to HR about a performance review that was not conducted per [company] policy, and based upon disability discrimination." Appellant Br. at 20. And he argues the Brewery "suspended him, which is the adverse action here." *Id.* at 21. But neither alleged protected activity suffices.

The first fails because it is not, in fact, a protected activity. The ADA does not protect serving as a witness in sexual assault and harassment proceedings. That activity has no relation to a disability, or to an action opposing an ADA-prohibited discrimination. *See* 42 U.S.C. §§ 12101–12213; *Rorrer*, 743 F.3d at 1046. Just because sexual harassment is discriminatory does not make it discrimination under the ADA. As we have said already, the ADA is not a "catchall statute." *Rorrer*, 743 F.3d at 1046. Like in *Rorrer*, Pemberton "cannot establish a prima facie case of ADA retaliation because the ADA does not cover the activity for which he allegedly suffered retaliation." *Id.* at 1047.

The second activity fails because it is not causally connected to the adverse action. It refers to Pemberton's complaint to HR about Pohlman's shift notes and disparaging comments about Pemberton's back injury. But the Pohlman issue took place more than two years before Pemberton's suspension, which occurred in May 2021. Even if we interpreted Pemberton's reference to his HR complaint to encompass Pohlman's calling Pemberton as a witness in

Pohlman's June 2020 lawsuit, Pemberton continued working for the Brewery for a long while after he testified. One would not infer that Pemberton's role in that investigation could cause his suspension two years or even one year after the fact. That is not temporally proximate to the alleged adverse action.

Nor is it, more relevantly, a but-for cause. First, the Brewery fired Pohlman back in 2019 for his comments about Pemberton's disability. Second, there was an intervening investigation into inappropriate comments Pemberton made to EE-1 and uncorroborated, sexual comments he allegedly made to EE-2. The Brewery began its investigation into EE-1's complaint of Pemberton in May 2021, suspended Pemberton that same month, interviewed Pemberton on June 2, 2021, and ultimately presented Pemberton with the Last Chance Agreement or severance package the next week. The Brewery told Pemberton the day it offered those two options that he was "a toxic employee." R. 80-1, Pemberton Dep., PageID 895. These facts indicate that Pemberton's complaint about an employee that the Brewery fired two years before Pemberton's suspension was not a but-for cause for his suspension. Even though satisfying the causal connection prong is not a high bar, Pemberton has failed to provide any evidence worthy of deducing a causal connection here.

Because Pemberton bases his discrimination claim on Pohlman's discrimination, thus tracking his second retaliation argument, he fails to establish a causal connection again. Pohlman's discriminatory comments occurred before he was fired in March 2019 and before Pemberton returned to work without physical restrictions in November 2019. The more than two-year period that elapsed between Pohlman's comments and Pemberton's suspension, and the intervening investigation into Pemberton's own comments to EE-1, prevent a reasonable jury from finding a causal connection. Because he cannot establish a prima facie case of discrimination or retaliation, his claims fail.

But even if Pemberton could establish the prima facie case, he does not offer sufficient evidence to create a jury issue as to pretext for either claim. In other words, he lacks proof to overcome the Brewery's legitimate non-discriminatory reason for Pemberton's termination: "Pemberton engaged in inappropriate behavior towards EE-1 based on EE-1's mental health." Appellee Br. at 44.

Pemberton tries to argue that this reason is pretextual because EE-1 was not intimidated by Pemberton, given EE-1 supposedly referred to Pemberton as a "big teddy bear." Pl. Resp., R. 90 at 17; Reply at 11. But this argument lacks evidentiary support. Pemberton's counsel identifies no place in the record where EE-1 made this statement. The lack of proof is glaring given that Pemberton's counsel was asked on countless occasions for a verifiable citation for the "big teddy bear" remark—by the Brewery, the district court, us at oral argument, and when we requested supplemental briefing on the issue. *See, e.g.*, *Pemberton*, 2024 WL 1152267, at *7. In response to our most recent request, counsel claims it was EE-3 who said that line and then refers us to "a footnote on page 11" of Pemberton's Reply Brief. That footnote tells us that "Plaintiff already clarified that the teddy bear comment came from the employee who was raped, EE-3, not from EE-1." Reply at 11. But counsel also uses the "big teddy bear" comment on that same page to say, "Defendant's claim that Plaintiff was suspended due to intimidating behavior is undermined by witness testimony describing Plaintiff as a 'big teddy bear.'" *Id.* Counsel still has not given us a record cite. We agree with the Brewery that this is a "goose-chase," and that Pemberton's counsel makes "serious and active misstatements of the record." Appellee Br. at 45–46.[6] Pemberton has failed to set forth evidence to show pretext. The district court therefore properly granted summary judgment to the Brewery on his ADA discrimination claim.

**B.       Michigan's Persons with Disabilities Civil Rights Act**

Pemberton brought three claims under Michigan's Persons with Disabilities Civil Rights Act (PWDCRA): Count II (Failure to Accommodate), Count IV (Retaliation), and Count VI (Discrimination). *See* Mich. Comp. Laws § 37.1202(1)(b); R. 1, Complaint, PageID 9, 13, 18. Each claim rests on the same facts as Pemberton's ADA claims. The district court granted summary judgment to the Brewery on each claim. *Pemberton*, 2024 WL 1152267, at *9–10.

The PWDCRA prohibits an employer from discriminating against a qualified individual with a disability. Mich. Comp. Laws § 37.1202(1)(b). The state law "substantially mirrors the

---

[6]Attorneys are officers of the court and are expected to accurately represent the contents of the record. Misstatements of this kind—whether through carelessness or by design—undermine the integrity of the litigation process. We caution counsel that such conduct is not an acceptable litigation strategy and risks detracting from the honest advocacy owed to the client.

ADA," so resolving an ADA claim will generally resolve a plaintiff's PWDCRA claim. *Donald v. Sybra, Inc.*, 667 F.3d 757, 764 (6th Cir. 2012). That makes most of our analysis quick. We resolve Pemberton's PWDCRA discrimination and retaliation claims by relying on our analysis of his equivalent ADA claims. Because we affirm the district court's ADA decision, and because the same facts and burden-shifting framework apply to Pemberton's PWDCRA retaliation and discrimination claims, *see* Mich. Comp. Laws § 37.1210(1), we also affirm the district court's grant of summary judgment to the Brewery on the PWDCRA claims.

The analysis for Pemberton's state law failure-to-accommodate claim, however, is a little more involved. Though the grounds for Pemberton's PWDCRA accommodation claim are not readily discernible on appeal, we conclude after analyzing his complaint and summary judgment briefing that he bases the claim on the Brewery's refusal to create a new position for him or give him more light duty work after August 2019 and the Brewery's decision to instead place him on medical leave.[7]

We cannot resolve his PWDCRA accommodation claim like his ADA claim because the state law does not share the ADA's exhaustion requirement and instead has a three-year statute of limitations.[8] *See* Mich. Comp. Laws § 600.5805; *Garg v. Macomb Cnty. Cmty. Mental Health Servs.*, 472 Mich. 263, 281–82 (2005), *opinion amended on denial of reh'g* (July 18, 2005). So instead of deciding the claim on exhaustion and timeliness grounds as we did for Pemberton's ADA failure-to-accommodate claim, we decide the state law equivalent on the merits without deciding whether Pemberton met the statutory deadline. We conclude he does not establish a prima facie case of accommodation.

The PWDCRA follows *McDonnell Douglas*'s framework, so Pemberton bears the first burden of proving a prima facie case. *See* Mich. Comp. Laws § 37.1210(1). To do so, he must establish (1) he is "disabled" as defined in the statute, (2) his disability does not prevent him

---

[7]The district court also entertained an argument construing Pemberton to argue that the denial of the internal job applications was a failure to accommodate. *See Pemberton*, 2024 WL 1152267, at *9. But Pemberton does not raise the issue on appeal, and it would fail anyways under state law for the same reasons discussed above.

[8]Pemberton filed his Complaint on August 12, 2022, so any claim premised on conduct before August 12, 2019, is time barred.

from performing the duties of a particular job or position, with or without accommodation, § 37.1103(l)(i), and (3) he has been discriminated against in one of the ways set forth in the statute. *See* Mich. Comp. Laws § 37.1202(1)(b); *Rourk v. Oakwood Hosp. Corp.*, 458 Mich. 25, 31 (1998) (analyzing Handicappers' Civil Rights Act (HCRA), renamed PWDCRA); *Peden v. City of Detroit*, 470 Mich. 195, 204 (2004); *Petzold v. Borman's, Inc.*, 241 Mich. App. 707, 714 (2000). In other words, the PWDCRA guarantees that a disabled individual otherwise qualified for a particular job is entitled to some accommodation as outlined in § 37.1210, like altered schedules or new equipment. *See Webster v. Target Corp.*, No. 22-11293, 2024 WL 4063907, at *4 (E.D. Mich. June 27, 2024); *Cunningham v. USF Holland, Inc.*, No. 310141, 2013 WL 1748563, at *5 (Mich. Ct. App. Apr. 23, 2013) (per curiam).

But those accommodations do not include an employer modifying the primary job duties. *See* Mich. Comp. Laws § 37.1210(15); *Rourk*, 458 Mich. at 31. Nor does the PWDCRA require an employer to create or offer the disabled employee a new position as an accommodation if the employee can no longer perform the essential duties of the job for which he was originally hired. *See Rourk*, 458 Mich. at 33–34; *see also Kerns v. Dura Mech. Components, Inc.*, 242 Mich. App. 1, 16 (2000) ("An employer . . . has no duty to accommodate the plaintiff by recreating the position, adjusting or modifying job duties otherwise required by the job description, or placing the plaintiff in another position."). Unlike the ADA, which "requires accommodation in the form of reassignment," the PDWCRA lacks "a duty to transfer as a form of accommodation." *Rourk*, 458 Mich. at 32. In *Rourk*, that meant that a registered nurse who could not lift more than five pounds after a shoulder injury and therefore not perform, with or without accommodation, the essential duties of a nurse, "was not entitled to a job transfer" accommodation under state law. *Id.* at 36.

Pemberton suffers the same fate. The record shows that Pemberton could not perform the essential duties of his senior brewer position from March 2019 to November 2019. Not only was Pemberton unable to perform his essential job duties with or without accommodations, but he also wanted the Brewery to create a new role for him. The Brewery's decision to reject his request does not violate state law and instead falls well within *Rourk*'s holding. Indeed, the accommodations he received after August 2019 surpass the Brewery's state law obligations.

The Brewery continued to search for a job for Pemberton when he could not perform as senior brewer, gave him his full wages in the Transitional Work program, and then placed him on an approved leave of absence when the light duty work ran out. By November 2019, he returned to his senior brewer position restriction-free. Pemberton ultimately cannot establish the prima facie case for accommodation. So we affirm the district court's grant of summary judgment.

## C.    Michigan's Elliot-Larson Civil Rights Act

Pemberton alleges age discrimination under Michigan's Elliott-Larsen Civil Rights Act (ELCRA).[9]    Mich. Comp. Laws § 37.2202.   That statute bars age-based discrimination in employment, including in matters of compensation and the terms, conditions, or privileges of employment.   *See* Mich. Comp. Laws § 37.2202(1)(a).   Pemberton claims that younger employees were "treated differently" than him "by being held to a less stringent standard" and "preferred over older workers who tended to suffer injuries after working for" the Brewery "for many years." R. 1, Complaint, PageID 20–21. The district court granted summary judgment to the Brewery because Pemberton "failed to offer sufficient evidence to create a triable issue for the jury concerning whether age was a motivating factor in Bell's employment decisions." *Pemberton*, 2024 WL 1152267, at *11. We agree.

To allege an ELCRA violation, Pemberton must bring suit within three years of the alleged adverse action. Mich. Comp. Laws § 600.5805. "ELCRA claims are analyzed under the same standards as federal ADEA claims." *Geiger v. Tower Auto.*, 579 F.3d 614, 626 (6th Cir. 2009); *see Drews v. Berrien County*, 839 F. App'x 1010, 1012 (6th Cir. 2021).[10]   Because Pemberton lacks any "direct evidence of impermissible bias," the *McDonnell Douglas* burden-shifting framework applies again. *Hazle v. Ford Motor Co.*, 464 Mich. 456, 462 (2001).

---

[9]Pemberton did not also bring an ADEA age discrimination claim. *See* Complaint, R. 1, PageID 20–21.

[10]But a plaintiff bringing an age discrimination claim under ELCRA need only show that he or she was replaced by a younger employee, as opposed to a "substantially" younger individual in the ADEA context. *Compare Barnell v. Taubman Co.*, 203 Mich. App. 110, 120–21 (1993) (holding prima facie case requires a showing that plaintiff was replaced by a younger person), *with Bush v. Dictaphone Corp.*, 161 F.3d 363, 368 (6th Cir. 1998) (holding the successful applicant must be "substantially" younger).

That framework requires Pemberton to first establish a prima facie case of age discrimination.[11] If he does, the Brewery has the burden to advance an age-neutral reason for its employment decision to rebut the discriminatory presumption. *Id.* at 467. If the Brewery succeeds, Pemberton must then establish pretext, demonstrating "that the evidence in the case, when construed in" his "favor, is sufficient to permit a reasonable trier of fact to conclude that discrimination was a motivating factor for the adverse action." *Id.* at 465 (internal quotations omitted). This "final stage of the *McDonnell Douglas* framework" asks whether Pemberton's protected characteristic, his age, would have "made a difference in the contested employment decision." *Id.* at 466. The district court assumed without deciding that Pemberton established a prima facie case of age discrimination. *See Pemberton*, 2024 WL 1152267, at *10. We do the same and resolve the issue on pretext grounds.

Pemberton provides no evidence demonstrating that age was a motivating factor in the Brewery's decisions not to promote him. The Brewery denied him two job opportunities within the ELCRA period of limitations: the technical brewer job awarded to Michael Dickinson on March 9, 2020, and the FSR position awarded to Scott Lusk on April 20, 2021. The Brewery justified its technical brewer decision because Lusk previously volunteered on projects worked on by technical brewers and he held a Bachelor of Science degree in beverage science. *See Pemberton*, 2024 WL 1152267, at *2 (citing R. 80-3, Schuiling Dep., at 38–39). And it supported its FSR decision with Dickinson's prior experience as a distributor, noting you "can't really beat the training that distributors provide to their sales folks." *Id.* Pemberton offers nothing to indicate these legitimate reasons are pretextual.

He instead focuses his appellate brief on arguing his age was a motivating factor behind the Brewery's offer of the Agreement or the severance package. Our analysis here as to pretext tracks our analysis of Pemberton's disability claims. The Brewery offered him the choice between the Agreement and the severance package because of his behavior towards EE-1. So, his age did not make a difference to the Brewery's decision. *See Hazle*, 464 Mich. at 466.

---

[11]That requires Pemberton to first prove that (1) he was a member of the protected class (i.e. older than 40); (2) he suffered an adverse employment action; (3) he was qualified for the position; and (4) he was replaced by a younger person. *Lytle v. Malady*, 458 Mich. 153, 177 (1998).

Pemberton's attempts to argue otherwise—whether by noting the Brewery suspended him before conducting his investigation or attempting to mislead us with his description as a "big teddy bear"—do not convince us. We affirm.

**D.      Title VII of the Civil Rights Act of 1964**

Pemberton claims the Brewery violated Title VII when it retaliated and discriminated against him. 42 U.S.C. § 2000e-3. But his Title VII claims, the district court held, share the same defects as his disability and age discrimination claims: he cannot establish pretext, or the claims fail on timely exhaustion grounds.

We need not examine whether the district court correctly granted summary judgment on the Title VII claims because Pemberton forfeited the challenge. Generally, "an appellant abandons all issues not raised and argued in its initial brief on appeal." *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 540 (6th Cir. 2014) (internal quotations omitted). And when referring to an issue "in a perfunctory manner, unaccompanied by some effort at developed augmentation," we deem the issue forfeited. *Doe v. Mich. State Univ.*, 989 F.3d 418, 425 (6th Cir. 2021) (cleaned up).

Pemberton references a "genuine issue of material fact regarding his Title VII claims" just once in his opening brief. *See* Appellant's Br. at 11. In no other place does he develop or explain why the district court's Title VII decision was wrong. Because that is a perfunctory mention of an issue without later augmentation, we affirm the district court's grant of summary judgment to the Brewery on the Title VII claims.

**E.      Motion to Reconsider**

Finally, Pemberton asks us to reverse the district court's denial of his motion to reconsider. But like his Title VII claim, Pemberton forfeited the challenge. "A party may not raise an issue on appeal by mentioning it in the most skeletal way, leaving the court to put flesh on its bones." *United States v. Hendrickson*, 822 F.3d 812, 829 n.10 (6th Cir. 2016) (cleaned up).

He mentions the adverse judgment only twice in his opening brief.  Although he lists it in his statement of issues, Pemberton's brief only devotes one sentence to the challenge in its body. He asserts that the district court wrongly treated his motion for reconsideration as a motion to alter or amend the judgment under Federal Rule Civil Procedure 59(e) despite him bringing the motion under Local Civil Rule 7.4.  That is a skeletal mention.  Despite passing references to the motion, his lack of effort to develop the argument in the body of his brief or to explain why the district court's treatment of his motion warrants reversal forecloses our review.  *See Rose,* 766 F.3d at 540.

## IV.

For these reasons, we **AFFIRM** the district court's grant of summary judgment to Bell's Brewery in full.